IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

FEB 3 2014

| | |
|---|---|
| KATHERINE KOZLOWSKI,<br>    PLAINTIFF,<br><br>VS.<br><br>CAROLYN W. COLVIN, ACTING<br>COMMISSIONER OF SOCIAL SECURITY,<br>    DEFENDANT. | §<br>§<br>§<br>§  CIVIL ACTION NO. 4:13-CV-020-A<br>§<br>§<br>§<br>§ |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Katherine Kozlowski ("Kozlowski") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Kozlowski protectively filed her applications in February and April 2010, alleging that her disability began on August 26, 2007. (Transcript ("Tr.") 53, 174-81.) After her applications for benefits were denied initially and on reconsideration, Kozlowski requested a hearing before an administrative law judge ("ALJ"). (Tr. 53, 104-118, 121.) The ALJ held a hearing on November 2, 2011 and issued a decision on

January 10, 2012 denying Kozlowski's applications for benefits. (Tr. 53-61, 66-99.) On December 10, 2012, the Appeals Council denied Kozlowski's request for review, leaving the ALJ's January 10, 2012 decision as the final decision of the Commissioner in Kozlowski's case. (Tr. 1-3.) Kozlowski subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or

equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

### III. ISSUE

In her brief, Kozlowski presents the following issue: Whether the ALJ erred in failing to include all limitations caused by her functional impairments in the residual functional capacity ("RFC") assessment. (Plaintiff's Brief ("Pl.'s Br.") at 1, 8-15.)

### IV. ALJ DECISION

In his January 10, 2012 decision, the ALJ found that Kozlowski had not engaged in any substantial gainful activity since August 26, 2007, her onset date of disability, and that she met the disability insured status requirements of the SSA through September 30, 2012. (Tr. 55.) At Step Two, the ALJ found that Kozlowski suffered from the following severe impairments: "morbid obesity, diabetes with neuropathy, osteoarthritis, degenerative disc disease, carpal tunnel syndrome, sleep apnea, and asthma." (Tr. 55.) At Step Three, the ALJ found that Kozlowski did not suffer from an impairment or combination of impairments that met or equaled any section in the Listing. (Tr. 56.) As to Kozlowski's RFC, the ALJ stated, "After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1657(a) and 416.967(a) except must be performed in a clean atmospheric environment." (Tr. 56 (emphasis omitted).) Based upon this RFC assessment, the ALJ opined that Kozlowski was unable to perform her past relevant work. (Tr. 59-60.) However, based upon the testimony of a vocational expert, the ALJ found that there were jobs that existed in significant numbers in the national economy that Kozlowski could perform. (Tr. 60.) Consequently, the ALJ found that Kozlowski was not disabled. (Tr. 60-61.)

## V. DISCUSSION

### A. RFC Determination

Kozlowski argues that the ALJ's RFC assessment is not supported by substantial evidence. (Pl.'s Br. at 1, 8-15.) Specifically, Kozlowski claims that the ALJ erred in finding at Step Two that Kozlowski had the severe impairment of carpal tunnel but then failed to incorporate any limitation relating to such impairment in the RFC determination. (Pl.'s Br. at 9-13.) In addition, Kozlowski claims that the ALJ erred by failing to include any limitations in the RFC determination regarding her edema in her lower extremities, including the need to elevate her legs during the day. (Pl.'s Br. at 13-15; Plaintiff's Reply ("Pl.'s Reply") at 1-6.)

RFC is what an individual can still do despite her limitations.[1] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[2] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at *3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and

---

[1] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[2] Exertional capacity addresses an individual's ability to "perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

5

continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. § 416.929; SSR 96-7p, WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7C, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.").

### 1. Failure to Incorporate RFC Limitations Relating to Kozlowski's Carpal Tunnel Syndrome

As stated above, Kozlowski claims that the ALJ erred by finding at Step Two[3] that her carpal tunnel syndrome was a severe impairment but then failing to include any limitations in the

---

[3] To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *cf. id.* §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The Fifth Circuit, however, has held that a literal

6

RFC determination relating to her manipulative limitations. (Pl.'s Br. at 8-13; Pl.'s Reply at 1-5.)

Kozlowski argues that there was no medical source statement in the evidence that set forth the functional limitations that resulted from Kozlowski's carpal tunnel syndrome and, thus, the ALJ erred when he based his RFC determination on his own lay opinion of the functional limitations caused by such syndrome. (Pl.'s Br. at 9-10.) Furthermore, citing to *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), Kozlowski claims, in essence, that the ALJ had a duty to develop the record by requesting a medical source statement to address Kozlowski's functional limitations due to her carpal tunnel syndrome. (Pl.'s Br. at 10-13; Pl.'s Reply at 2-3.)

In this case, as set forth above, the ALJ found at Step Two that Kozlowski had several severe impairments, including carpal tunnel syndrome. (Tr. 55.) In the RFC determination, the ALJ found that Kozlowski had the RFC to perform sedentary work except that she must work in a clean atmospheric environment. (Tr. 56.) In making such a determination, the ALJ stated the following, *inter alia*, as to Kozlowski's carpal tunnel syndrome, hands, and wrists:

> Ms. Kozlowski alleges disability due to . . . carpal tunnel syndrome. . . . She has numbness in her hands and is not able to hold anything without dropping it. . . .
>
> . . . .
>
> The following month [May 2006], notes showed her Phalen's sign and Tinel's sign were positive over both wrists. Muscle strength was 5/5 bilaterally and her pinprick sensation was intact. . . .
>
> . . . .

---

application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1104–05. Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101 (emphasis added).

> Follow-up notes dated July 2008 revealed she complained of right hand pain and numbness, and a lump on her right wrist. . . . She was diagnosed with right elbow ulnar nerve compression and a right radial wrist cyst. A cubital tunnel release was done the next month on the right elbow. . . .
>
> . . . .
>
> At the hearing, the claimant testified as follows. . . . She has carpal tunnel that is worse on the right, and she is always dropping things. She has problems pulling, grasping, and pushing. . . .
>
> . . . .
>
> While the claimant has osteoarthritis, degenerative disc disease, and carpal tunnel syndrome, there is no evidence of muscle atrophy or deformity, complete loss of range of motion in any extremity or joint, and she does not require the use of an assistive device to ambulate. She is neurologically intact, and imaging studies did not reveal any significant deficits. Following her cubital tunnel release, her grip strength was noted to be within normal limits. Further, she was able to tend to her personal grooming independently, cook, perform light chores, shop, and go out alone. While not minimizing the claimant's symptoms, the evidence shows she is able to engage in work on a regular and continuing basis.

(Tr. 56-59 (internal citations omitted).)

As to Kozlowski's claim that it was inconsistent for the ALJ to find at Step Two that Kozlowski had a severe impairment of carpal tunnel syndrome and then not include any limitations in the RFC to account for such syndrome, the Court notes that "having a severe impairment is not a sufficient condition for receiving benefits under the Secretary's regulations," but "means only that claimant has passed the second step of the inquiry mandated by the regulations." *Shipley v. Sec. of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987). In other words, the consideration of whether a claimant's impairments are severe at Step Two is a different inquiry than an ALJ's assessment of the claimant's RFC. *See Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *9 (5th Cir. Aug. 19, 2005) ("A claimant is not entitled to social security disability benefits merely upon a showing that she has a severe disability. Rather,

8

the disability must make it so the claimant cannot work to entitle the claimant to disability benefits."); *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001) ("The ALJ's finding that [the claimant] had a 'combination of impairments that is severe' did not foreclose a finding that [the claimant] had a residual functional capacity to perform a range of light work, and is not necessarily inconsistent with that finding."); *Quigley v. Astrue*, No. 4:09-CV-402-A, 2010 WL 5557500, at *8 (N.D. Tex. Sept. 8, 2010).[4]

As to Kozlowski's claims regarding *Ripley v. Chater*, the Court finds that such case is distinguishable from the facts in this case. In *Ripley*, the ALJ found that the claimant could perform sedentary work even though there was no medical evidence or testimony to support that conclusion. 67 F.3d at 557. The Fifth Circuit Court of Appeals, noting that the record contained a vast amount of evidence establishing that the claimant had a back problem[5] but not clearly establishing the effect that condition had on his ability to work, remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557-58. The Fifth Circuit rejected the Commissioner's argument that the medical evidence that discussed the extent of the claimant's injuries substantially supported the ALJ's conclusion because the Court was unable to determine the effects of the claimant's condition, "no matter how 'small,'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 558 n.27.[6]

---

[4] *But see Martinez v. Astrue*, No. 2:10-CV-0102, 2011 WL 4128837, at *7 (N.D. Tex. Sept. 9, 2011); *Norman v. Astrue*, No. SA-10-CA-849-XR, 2011 WL 2884894, at *5 (W.D. Tex. July 18, 2011).

[5] "The evidence that was available for review by the ALJ shows a four year history of surgery, medical examinations, and complaints of pain" as well as the claimant's testimony. *Ripley*, 67 F.3d at 557.

[6] The absence of a medical source statement describing the types of work that a claimant is capable of performing does not, in itself, make the record incomplete. *Ripley*, 67 F.3d at 557. "However, evidence describing the claimant's medical conditions is insufficient to support an RFC determination." *See Moreno v. Astrue*, No. 5:09-CV-123-BG, 2010 WL 3025525, at *3 (N.D. Tex. June 30, 2010) (citing *Ripley*, 67 F.3d at 557); *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) ("In *Ripley* we held that an ALJ may not—without opinions from medical

Contrary to the facts in *Ripley*, in this case, there is a Physical Residual Functional Capacity Assessment ("PRFCA") that assesses the effects of Kozlowski's functional impairments on her ability to work and that was relied upon by the ALJ in making his RFC determination. In a PRFCA dated June 30, 2010, State Agency Medical Consultant Laurence Ligon, M.D. ("SAMC Ligon") opines that Kozlowski: (1) can lift and/or carry twenty pounds occasionally and ten pounds frequently; 2) can sit, stand and/or walk for a total of about six hours in an eight-hour workday; and (3) had the unlimited ability to push and/or pull. (Tr. 412; *see* Tr. 411-418.) SAMC Ligon further opined, *inter alia*, that Kozlowski had no manipulative, visual, communicative, or environmental limitations. (Tr. 414-15.) In making his RFC determination, the ALJ gave "great weight" to SAMC Ligon's PRFCA. (Tr. 59.)

While it is true, as asserted by Kozlowski, that SAMC Ligon did not specifically discuss Kozlowski's carpal tunnel syndrome in the RFCA, SAMC Ligon did note that Kozlowski had no cyanosis, clubbing, or pedal edema in her extremities. (Tr. 418.) In addition, the ALJ was aware of and specifically discussed Kozlowski's carpal tunnel syndrome but did not find that the substantial evidence in the record supported including any specific limitations in the RFC determination for such impairment. In this case, it is clear that the ALJ considered Kozlowski's impairments from her carpal tunnel syndrome at Step Two and in the RFC determination. Based upon other evidence in the record, the ALJ found, however, that Kozlowski was capable, *inter alia*, of performing sedentary work. Substantial evidence supports the ALJ's decision in this regard. An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence

---

experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions.") "[A]n ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams*, 355 F. App'x at 832 n.6.

supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citations omitted).

### 2. Failure to Incorporate Limitations Relating to Kozlowski's Edema

Kozlowski also argues that the ALJ failed in including limitations relating to her edema in her lower extremities, including the need to elevate her legs, in the RFC determination. (Pl.'s Br. at 13-15.) Contrary to Kozlowski's claims, the ALJ clearly considered Kozlowski's lower extremity edema in his RFC determination, mentioning such condition multiple times when analyzing the evidence in the record. (*See, e.g.*, Tr. 57-58.) The ALJ also pointed out examinations indicating that there was no "pedal edema" or only trace edema to her extremities. (Tr. 57, 58; *see* Tr. 374, 407.) As to Kozlowski's edema and the need to elevate her legs, the ALJ stated:

> The medical evidence discussed above does not provide a basis to support the level of severity alleged by the claimant. Concerning her diabetes, there is no evidence of end organ damage or cyanosis, clubbing or chronic edema to her extremities. Further, the records show the claimant was without her medication for long stretches of time and had only recently started insulin.

(Tr. 59.) The ALJ is not required to include limitations in the RFC determination that are not supported by the evidence in the record.

Furthermore, Kozlowski offers no evidence that the alleged edema in her lower extremities resulted in additional work-related limitations beyond the limitations already set forth in the RFC determination limiting her to sedentary work in a clean atmospheric environment. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) ("The mere presence of some impairment is not disabling per se.") Furthermore, Kozlowski has failed to identify any evidence that indicates that any such impairments limited her ability to perform sedentary work activities,

11

and there is no objective medical evidence that any decreased functioning was attributable to such impairments. *Id.* at 165-66. *See, e.g., Campos v. Astrue*, No. 5:08-CV-115-C, 2009 WL 1586194, at *3-4 (N.D. Tex. June 8, 2009); *Crossley v. Astrue*, No. 3:07-CV-0834-M, 2008 WL 5136961, at *5 (N.D. Tex. Dec. 5, 2008) ("Obesity is not a per se disabling impairment and Plaintiff has offered no medical evidence that her obesity actually results in these limitations or any further limitations beyond the sedentary work level found by the ALJ.") *See also Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (stating that the court will not vacate a judgment unless the substantial rights of a party have been affected). Based on the specific facts in this case, it is clear that the ALJ discussed (1) the evidence in the record in making his RFC determination, (2) adequately explained the reasoning for such determination and for giving less weight to certain evidence, and (3) exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Because there is substantial evidence in the record that supports the ALJ's RFC determination, the Court concludes that remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only

make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **February  17 , 2014**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED **February  3 , 2014.**

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv